GREEN v. OSTRANDER.

1. BILLS AND NOTES — FAILURE OF CONSIDERATION — PLEADING — NOTICE OF DEFENSE.

Evidence in support of defendant's claim should not be excluded, in an action on promissory notes in which a notice of special defense was given by the defendant to the effect that the notes were executed for the purchase price of mining stock held by a trustee, and to be thereafter issued, that defendant never received the stock, and the consideration for the notes had totally failed; the notice containing sufficient averments of failure of consideration.

2. SAME—HOLDER IN DUE COURSE—GOOD FAITH.

The fact that the money paid by defendant had been obtained from a bank, on the notes which plaintiff subsequently paid, is not a defense where the testimony showed the bank knew all about the transaction and the consideration therefor, and it was not a holder in good faith.

Error to Ontonagon; Cooper, J. Submitted January 11, 1910. (Docket No. 35.) Decided April 1, 1910.

Assumpsit by Thornton A. Green against Edwin J. Ostrander on certain promissory notes. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*Adams & Jones* (*P. H. O'Brien*, of counsel), for appellant.

*Arthur H. Brown*, for appellee.

MOORE, J. The plaintiff commenced suit by declaration attached to which were two notes. One of them reads as follows:

"$100.00.    ONTONAGON, MICH., Jan. 21, 1907.
"Thirty days after date, I or either of us promise to pay to the order of the First National Bank, one hundred

------ dollars at the First National Bank of Ontonagon, for value received, with interest at seven per cent. per annum after due, until paid.

"Due Feb. 21–'07.   No. 1370.

"E. J. OSTRANDER."

This note was indorsed by T. A. Green and afterwards was paid by him. The other note reads the same, except that it was due 60 days after date, instead of 30 days after date.

The defendant pleaded the general issue, and gave the following notice:

"Please to take notice: That at the trial of this cause the defendant will give in evidence and insist under the plea of general issue by him above pleaded. That on or about the 1st day of August, A. D. 1906, the said plaintiff and the said defendant, entered into a certain agreement, whereby the said plaintiff agreed to assign and transfer 200 shares of a certain mining stock designated by the said plaintiff as ' Mikado Mining & Milling Company stock,' and that by the said agreement the said plaintiff undertook and promised to deliver the said stock to the said defendant, with all assessments paid, as soon as the same was issued, and which said stock the said plaintiff represented to the said defendant was then in the hands of Dan H. Ball, of Marquette, Mich., as trustee. That the said defendant, acting in good faith, and relying upon the promises and representations made to him by the said plaintiff, and believing in good faith that he would receive the said 200 shares of said stock, in consideration therefor undertook and promised to pay to the said plaintiff the sum of $400. That on the 21st day of November, A. D. 1906, the said defendant paid $100, and that on the 21st day of December, A. D. 1906, the said defendant paid another $100 of said above-mentioned sum of $400. That if the said defendant executed the notes in said declaration set forth, whether as alleged in the said declaration or otherwise, the same were executed in pursuance of the above-mentioned agreement and under the belief in good faith by the said defendant that he would receive the said 200 shares of said stock from the said plaintiff as was agreed between them, and the said defendant relied upon the aforesaid representations of the said plaintiff. That the said plaintiff, disregarding

his promises and undertakings in that behalf, has not delivered the said stock nor the certificates thereof nor any part of the same to the said defendant, and, although often requested so to do, has utterly failed to keep his promise and undertaking in that behalf.   Therefore the said defendant claims that the consideration of the said alleged promissory notes and for the sum of $200 paid by the said defendant has totally failed.   That if the notes set up in the plaintiff's declaration were made payable to the First National Bank of Ontonagon, Mich., they were made payable to said First National Bank for the convenience of the said defendant and did not become the property of the said First National Bank.   That by reason of the failure of the above-named plaintiff to carry out his said promises and undertakings and to deliver the said stock to the said defendant as agreed between them, the said defendant has been greatly injured, and has sustained damages to a large amount, to wit, the sum of $250, which said damages, or so much thereof as will be sufficient, said defendant, Edwin J. Ostrander, will claim by way of recoupment, against the demand of the said plaintiff to be proved at the trial of said cause, and prays for the balance thereof to be certified in his favor."

Upon the trial plaintiff produced as a witness the cashier of the bank, who gave his version of the notes sued upon.   Upon the cross-examination and against the objection of plaintiff he was cross-examined about the origin of the debt represented by the notes, and testified, in part, as follows:

"Those notes, of which the notes we see are in part renewal, were given in payment for that stock.   They borrowed the money for that stock, I remember.   So that Mr. Ostrander signed his name to certain notes, making $400, and Mr. Green indorsed each and all of those notes, and then the bank gave the money to Mr. Green. * * * I presume Exhibit 2, which is shown me, is the paper that was deposited as collateral security for notes given. * * * But I paid no special attention to this.   I wasn't concerned in this, and I knew the security was good enough when Mr. Green indorsed the note.   That is all I cared for.   I didn't care for this; but I presume this was the paper that was pinned to the note and was supposed to be delivered when the note was paid. * * * I think Exhibit 2 is

in Mr. Green's handwriting. I presume Exhibits 3, 4, and 5, purporting to be notes signed by Mr. Ostrander on August 21, 1906, the same date as Exhibit 2, are the notes for which Exhibit 2, the receipt, was given as collateral security. * * * I guess he paid $200 in order to take up the $200 note. I think that is right; that he made out two notes, Exhibits A and B, in renewal of the $200 notes."

Exhibits A and B are the notes upon which suit is brought.

Exhibit 2, mentioned by the witness, reads as follows:

"ONTONAGON, MICH., Aug. 21, 1906.

"For value received I hereby assign and transfer two hundred shares of Mikado Mining and Milling Co. stock to E. J. Ostrander.

"Certificates to be delivered as soon as issued, with all assessments paid.

"THORNTON A. GREEN.

"Said shares now held by Dan H. Ball, Trustee.

"T. A. GREEN."

Exhibit 3, mentioned by him, reads as follows:

"$200.00.          ONTONAGON, MICH. 8 / 21 / 06.

"Five months after date I promise to pay to the order of Thornton A. Green, at First National Bank of Ontonagon, Two Hundred no / 100 dollars, for value received. with interest at the rate of 6 per cent. per annum.

"No. 1144.

"Due January 21–1907.

"E. J. OSTRANDER.

"I have transferred and delivered to the holder of this note as collateral security, for the payment of this and of any other liabilities of the undersigned to said payee or assigns, due or to become due or that may hereafter be contracted, the following property, value of which is Four Hundred Dollars, viz.: An agreement to transfer two hundred shares of Mikado Mining and Milling Co. stock when certificates are issued. And the undersigned hereby gives the said payee and assigns authority to sell the said property, or any part thereof, or any substitutes thereof, and all additions thereto, on the maturity of the above note, or any time thereafter, at any public or private sale, with the right to said payee and assigns themselves to be

the purchasers, when the sale is made at any Brokers' Board or public sale. And after deducting all costs and expenses, to apply the residue to the payment of any, either or all liabilities as aforesaid, as said payee or assigns shall elect, returning the overplus to the undersigned; and in case the proceeds of the sale of said property shall not cover the principal, interest and expenses, the undersigned engages to pay the deficiency forthwith after such sale, with legal interest.

"The First National Bank
"PAID
"Jan. 22, 1907     E. J. OSTRANDER."
"of Ontonagon, Mich."

On the back of Exhibit 3 was indorsed: "T. A. Green."

The defendant was sworn, and was allowed, against the objection of the plaintiff, to give his version of the transaction. His testimony was, in substance, that he purchased 200 shares of Mikado Mining & Milling stock of plaintiff; that the only consideration for the making of Exhibits 3, 4, and 5, which were originally put in the bank, and the notes sued upon which were renewals, was the above stock.

"I have never been delivered a certificate showing my 200 shares of capital stock of the Mikado Mining & Milling Company. I have never been delivered any certificate of stock at all in that company. I have made a demand upon Mr. Green for the delivery of the shares that I purchased from him. That demand was made the 21st day of February, 1907, in writing. * * * I demanded a delivery of that stock. Mr. Green jumped up and said to me, 'Mr. Ostrander, that stock has never been issued and never will be.' * * * My transaction relative to those notes was entirely with Mr. Green. I didn't have the money handy at the time to pay cash for the stock. Mr. Green proposed to go to the bank to get the money. He said he would be able to get the money at the bank by indorsing the notes. He said he would indorse them, and when they would become due I would pay them, and, not being able to pay them, these renewals were made from time to time. * * *

"*Q.* Well, did you receive anything at all for those notes?

"*A.* I received the paper that was handed me by Mr. Green. I did not receive anything else other than this paper, which is marked 'Exhibit 2.' I did not receive the stock, or any other stock contemplated by this paper. * * *

"*Mr. Brown:* If the court please, I wish to make my motion again, or make a new motion, that that evidence be stricken out, all evidence given by that witness, for the same reason as appears at the commencement of this testimony.

"*The Court:* The motion is hardly in proper form. I suppose you want to move to direct a verdict?

"*Mr. Brown:* Yes, I want to move to direct a verdict in favor of the plaintiff in this case on the two notes, and against the defendant in favor of the plaintiff on the question of recoupment. * * * My reasons for asking a direction of the verdict at this time are: *First,* that the plaintiff has made a *prima facie* case. *Second,* that the testimony introduced on behalf of the defendant is incompetent, irrelevant, and immaterial, and that the testimony is inadmissible for the reason that the defendant proposes, first, to show breach of contract, and there is no sufficient allegation of breach of contract contained in the plea. Further, that the testimony purports to show a failure of consideration—a total failure of consideration—whereas, the plea of the defendant specifically admits that a consideration moved. That the contract set up in the plea of the defendant is not proper subject of recoupment in this case. * * * That the defendant has not proved or established his right to the stock. Further, that the evidence tending to impeach the validity of the note is inadmissible for the reason that it cannot be impeached in the hands of a bona fide holder until it was shown that he took it under circumstances which render him guilty of bad faith, or has notice of equities.

"*The Court:* My mind is made up in this case. As I feel at present, I am quite positive the two notes sued upon by the plaintiff in this case were given in payment for certain shares of stock in the Mikado Mining & Milling Company, sold by the plaintiff to the defendant, and at the time of selling it he agreed to deliver the stock when issued; the stock itself being held in trust by one D. H. Ball, of Marquette, Mich. The defendant, in addition to

pleading the general issue, has added to his plea the fact that the original contract for which the notes were given was without consideration, for the reason that it seems the stock was never issued.   There is no evidence in this notice, or in the plea of recoupment, or generally, that the stock had been issued, nor any failure on the part of the plaintiff to have carried out his part of the agreement in the event that the stock had been issued.   There has been some evidence introduced that the stock never would be issued; but I am of the opinion that the original agreement was certainly equitable with a consideration, and it was an actual sale by the plaintiff of these shares of stock to the defendant.   A note was first given to complete the contract; and afterwards this note was taken up, and new notes given by the defendant to the bank.   It seems that the plaintiff indorsed these notes, the bank loaned the defendant money, and the money was paid to the plaintiff. It appears to me that at that time the plaintiff was actually paid for the shares of stock; and this suit is to recover on the renewal of notes given at that time which the plaintiff became indorser of, and he is entitled to recover here as indorser upon those notes.   But in any event, it seems to me that there was a consideration passed at the time of the original contract.   *   *   *   I am further of the opinion that the motion of the plaintiff made at the beginning of the defense in this case to shut out all this evidence on the ground that there was nothing in the notice or the plea of recoupment charging failure of consideration or charging a failure on the part of the plaintiff to deliver the stock when issued, in accordance with the original contract, ought to have been granted, and that testimony not admitted.   Therefore I will proceed to direct a verdict."

He at once directed a verdict in favor of plaintiff.

It will be observed that the trial judge did not in terms strike out the testimony which he says ought not to have been admitted, but he seems to have directed a verdict after a consideration of the entire case.   If a direct ruling had been made about the testimony, the defendant might have asked leave to amend his plea.   We think the court was in error in saying there was nothing in the plea or the notice under the plea charging a failure of consideration.   We think, also, that there is room under the testi-

mony for another conclusion than the one stated by him, that the bank loaned the defendant the money for which the original notes were given. There is also room for the inference that the bank knew all about the consideration for which these notes were given, and the plaintiff, of course, knew for what they were given, so that we do not think it can be said as a matter of law that the plaintiff was a good-faith holder of these notes, for value, and without notice of any defense. To state the case most favorably to the plaintiff, it is clear that many phases of the defense urged here were proper matters to be submitted to the jury.

Judgment is reversed, and new trial ordered.

HOOKER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.